UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID ALLAN G.,[1] | |
| Plaintiff, | Case No. 1:21-cv-00162-DKG |
| v. | **MEMORANDUM DECISION AND ORDER** |
| COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | |

**INTRODUCTION**

Plaintiff filed a Complaint with this Court seeking judicial review of the Commissioner's denial of his applications for disability and disability insurance benefits, and supplemental social security income. (Dkt. 1). The matter is fully briefed and at issue. (Dkts. 19, 21, 22). Having carefully reviewed the parties' memoranda and the entire administrative record (AR), the Court will reverse and remand the decision of the Commissioner for the reasons set forth below.

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

## BACKGROUND

On February 23, 2019, Plaintiff protectively filed a Title II application for a period of disability insurance benefits, and a Title XVI application for supplemental security income on February 11, 2020. (AR 21). The applications allege a disability onset date of August 1, 2018. (AR 21). Plaintiff's applications were denied upon initial review on May 21, 2019, and again upon reconsideration on August 8, 2019. (AR 21, 71). A hearing was conducted on June 18, 2020, before Administrative Law Judge (ALJ) Wynne O'Brien-Persons. (AR 21, 42-70).[3]

After considering testimony from Plaintiff and a vocational expert, the ALJ issued a written decision on July 30, 2020, finding Plaintiff has not been under a disability since August 1, 2018. (AR 21-35). The Appeals Council denied Plaintiff's request for review on February 5, 2021, making the ALJ's decision the final decision of the Commissioner. (AR 2-8). Plaintiff timely filed this action seeking judicial review of the ALJ's final decision on January 11, 2022. (Dkt. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

On the alleged onset date, Plaintiff was fifty-five years of age. (AR 167). He completed two years of college and reported past work as a security officer, hotel night manager, credit card fraud analyst, and building concierge. (AR 210.) Plaintiff claims disability depression, spinal stenosis, type 2 diabetes, neuropathy, arthritis of the hip and hands, high blood pressure, and sleep apnea. (AR 71, 86, 167, 188, 209).

---

[3] The hearing was conducted telephonically due to the Coronavirus Pandemic of 2019 (COVID-19). (AR 21, 45).

**MEMORANDUM DECISION AND ORDER - 2**

**THE ALJ'S DECISION**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 23). At step two, the ALJ determined Plaintiff suffers from the following medically determinable severe impairments: cervical and lumbar degenerative disc disease; diabetes mellitus; chronic kidney disease; and obesity. (AR 24). The ALJ concluded Plaintiff's coronary artery disease, obstructive sleep apnea, hypertension, pain secondary to radial head fracture of the left elbow, major depressive disorder, and anxiety were not severe. (AR 24-25).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 26). The ALJ next found Plaintiff retained the Residual Functional Capacity (RFC) for sedentary work with the following exceptions:

> The claimant has no balance issues, but can perform all other postural activities only occasionally. The claimant needs to avoid concentrated exposure to cold, heat, and vibration. The claimant can tolerate only moderate exposure to hazards. Finally, the claimant is limited to walking or standing only 2 hours in an 8-hour workday.

(AR 28).

At step four, the ALJ found Plaintiff was able to perform past relevant work as a credit card control clerk and user support analyst as actually performed and as described in the Dictionary of Occupational Titles (DOT) and work as a travel clerk only as described in the DOT. (AR 33-34). The ALJ therefore determined Plaintiff was not disabled from the alleged onset date, through the date of the decision July 30, 2020.

## ISSUES FOR REVIEW

1. Whether the ALJ erred in failing to consider Plaintiff's non-severe mental restrictions in the RFC assessment.

2. Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony.

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id.* The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different

reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Id.* at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id.*

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court must uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The Court will not reverse the ALJ's decision if it is based on harmless error, which exists where the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal marks and citations omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1117–1122 (9th Cir. 2012).

## DISCUSSION

### 1. RFC Assessment

Plaintiff argues that the ALJ erred when she found that Plaintiff suffered from non-severe mental impairments at step two but failed to discuss any restrictions relating to those impairments in her construction of Plaintiff's RFC. (Dkts. 19, 22).

### a. Legal Standard

A claimant's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. Essentially, it is the most the claimant can do despite his or her limitations. *Id.* To assess an RFC, an ALJ must consider all of the claimant's medical impairments, including those that are not severe. *Id.* §§ 404.1545(a)(2), 416.1545(a)(2).

### b. The ALJ's Decision

Here, the ALJ concluded at step two that Plaintiff's major depressive disorder and anxiety were medically determinable mental impairments, but that they were nonsevere because they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (AR 25-26). Specifically, the ALJ found they caused no limitation in the first mental functional area of understanding, remembering, and applying information, and caused only mild limitations in the second, third, and fourth mental functional areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (AR 25-26).

As to understanding, remembering, or applying information, the ALJ found no limitation, noting that while Plaintiff alleges he has difficulty with memory, understanding, and following instructions, his mental exams consistently showed no memory loss; he demonstrated coherent speech and normal thought processes; and he scored a 30/30 on a mental status exam in April 2019. (AR 25). As to interacting with others, the ALJ contrasted Plaintiff's allegation that he has difficulty getting along with friends, family and neighbors and displayed irritability during a consultative exam with Dr. Heckard, with evidence that Plaintiff is otherwise described as pleasant and

cooperative and has had no history of confrontation with his wife, with whom he currently lives, and ultimately found Plaintiff's limitation in this area to be mild. (AR 25).

As to concentrating, persisting, and maintaining pace, the ALJ noted that while Plaintiff's adult function report alleged difficulty with concentration, it alleged no difficulty completing tasks, the record was "unremarkable for difficulties with concentration," and the mental status exams generally show he has normal attention and concentration, even when he experienced a mental decline secondary to new medication in June 2019. (AR 25). Ultimately, the ALJ determined that because Plaintiff "generally demonstrates normal attention and concentration, his condition no more than mildly limits his ability to concentrate, persist, or maintain pace." (AR 25-26). Finally, as to Plaintiff's ability to adapt or manage himself, the ALJ noted that although Plaintiff's adult function report alleges a decline in his ability to handle changes in routine, Plaintiff was able to testify at the hearing without difficulty, and throughout his medical history, he demonstrated normal judgment and insight and has no record of psychiatric treatment or hospitalization, which, to the ALJ, suggests "his condition is not serious enough to warrant treatment." (AR 26). Accordingly, the ALJ assessed Plaintiff with a mild limitation in this area as well. (AR 26).

After discussing each of the paragraph B criteria at length, the ALJ concluded:

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(AR 26).

Finally, toward the end of her decision, the ALJ stated as follows:

> In summary, after reviewing the claimant's file, I drafted the claimant's residual functional capacity to describe the maximum amount of work the claimant can do despite his impairments. I first considered all the claimant's alleged symptoms, then compared these symptoms with the entire record to find limitations both consistent with the claimant's allegations and supported by objective evidence. I concluded the claimant's impairments support limitations in his residual functional capacity, yet found his other alleged limitations were unsupported by the available evidence. Accordingly, the claimant's residual functional capacity considers all his impairments and limitations, thus any impairment, symptom, or condition not addressed above has not affected the claimant's residual functional capacity.

(AR 33).

### c.  Analysis

As the ALJ correctly noted, the RFC analysis requires a "more detailed assessment" of Plaintiff's mental impairments than what is included in the paragraph B analysis. SSR 96-8p; (AR 26). Accordingly, when making the RFC determination, the ALJ must "consider all limitations and restrictions imposed by all of an individual's impairments, even those that are not severe," along with all relevant evidence. SSR 96-8p; 20 C.F.R. § 404.1545. This is because in some instances, when a nonsevere impairment is considered "in combination with limitations imposed by an individual's

other impairments, the limitations due to such a [nonsevere] impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do." SSR 96-8p.

Here, despite the ALJ's finding that Plaintiff's non-severe mental impairments caused at least some limitation, the ALJ only specifically addressed Plaintiff's physical restrictions in the RFC. (AR 28).

The Court finds the ALJ erred by failing to include some discussion in the written decision, beyond mere boilerplate language, reflecting that she considered all of Plaintiff's medically determinable impairments, specifically his mental impairments, in fashioning the RFC and making the disability determination. *Patricia C. v. Saul*, No. 19-cv-00636-JM-JLB, 2020 WL 4596757, at *13 (S.D. Cal Aug. 11, 2020) (finding the ALJ erred in his mental determination by not considering, or making clear that he considered, plaintiff's mild mental limitations found at step two). Despite expressly acknowledging that the mental RFC assessment "requires a more detailed assessment" than that made at step two, the ALJ's discussion of Plaintiff's RFC contains no analysis of his mild mental limitations. (AR 28). Moreover, the boilerplate language the ALJ included throughout her decision is not sufficient to satisfy the more detailed assessment required under the regulations. *See Delia v. Saul*, No. 1:18-CV-00314-CWD, 2019 WL 4601834, at *7–9 (D. Idaho Sept. 23, 2019) ("The boilerplate language used in the ALJ's decision, without any discussion of Petitioner's mental impairments in the RFC determination, does not satisfy the regulation's requirements."); *Barrera v. Berryhill*, No. CV 17-07096-JEM, 2018 WL 4216693, at *5 (C.D. Cal. Sept. 5, 2018) (reversing the ALJ's decision where

she "did not say she had considered mild limitations or nonsevere impairments, offering only boilerplate language that she considered 'all symptoms'" (citation omitted)); *Carlson v. Berryhill*, No. 18-cv-03107-LB, 2019 WL 1116241, at *17 (N.D. Cal. Mar. 10, 2019) (holding that the ALJ did not sufficiently consider mild limitations and "offered only boilerplate language that the plaintiff's RFC 'reflects the degree of limitation ... found in [the] paragraph B mental function analysis'").

Additionally, the ALJ failed to link any of the restrictions contained in the RFC to Plaintiff's non-severe mental impairments. Instead, she specifically indicated that the restrictions contained in the RFC were related to Plaintiff's degenerative disc disease, diabetes mellitus, chronic kidney disease, and obesity. (AR 28-29). Nor did the ALJ provide any explanation as to why she did not include any restrictions relating to Plaintiff's mental impairments in the RFC. (AR 28-29). "While it is true that an ALJ need not include limitations in the RFC 'if the record supports a conclusion that the non-severe impairment does not cause a significant limitation in the claimant's ability to work,' the ALJ must still 'actually review[ ] the record and specif[y] reasons supported by substantial evidence for not including the non-severe impairment' in order to avoid committing legal error." *Sylvester H. v. Kijakazi*, No. 5:20-CV-02503-SP, 2022 WL 4466717, at *8 (C.D. Cal. Sept. 26, 2022) (citing *Koshak v. Berryhill*, 2018 WL 4519936, at *8 (C.D. Cal. Sept. 19, 2018)). The ALJ failed to do that here. *See Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012); *Delia v. Saul*, No. 1:18-CV-00314-CWD, 2019 WL 4601834, at *7-9 (D. Idaho Sept. 23, 2019); *Kitty S. v. Kijakazi*, No. EDCV 21-00390-JEM, 2022 WL 2117160, at *5-7 (C.D. Cal. June 13, 2022).

Finally, the ALJ's discussion of the medical evidence at step four merely substantiated her step two nonseverity finding. (AR 32). Specifically, at step four, the ALJ discussed the state agency psychological consultants' opinions that Plaintiff had mild limitations in all four areas of mental functioning. (AR 72-85, 87-102). The ALJ explained that although she found these opinions to be "persuasive" and "generally supported by the record," she clarified that because these opinions were "formed before all the evidence was available and before [Plaintiff] testified," their conclusions as to Plaintiff's ability to understand, remember or apply information were "not entirely supported by [Plaintiff's] good mental health exams from December 2019 to March 2020." (AR 32). The ALJ once again considered Plaintiff's 30/30 score on a mental status exam together with his worsening depression secondary to his right leg pain as further proof that the medical evidence was inconsistent with the consultants' opinions that Plaintiff was mildly limited in all four areas of mental functioning. (AR 32 (citing AR 732, 748, 750, 831, 915)). Ultimately, although the ALJ did reject the consultants' opinions as to Plaintiff's ability to understand, remember or apply information, she did not reject the remaining limitations and "never explained why [s]he failed to include those specific mild functional limitations in [her] RFC assessment." *See Aida I. v. Saul*, No. 319CV00476AJBRNB, 2020 WL 434319, at *5 (S.D. Cal. Jan. 28, 2020), report and recommendation adopted, No. 319CV00476AJBRNB, 2020 WL 1905356 (S.D. Cal. Apr. 17, 2020). This was error.

Defendant asserts that this Court should follow the Ninth Circuit's holding in *Hoopai v. Astrue*, 499 F.3d 1071 (9th Cir. 2007), and find that the ALJ was not required

**MEMORANDUM DECISION AND ORDER - 11**

to make any more specific findings of Plaintiff's limitations with respect to his mental impairments. (Dkt. 21 at 3). In *Hoopai*, the court held that while the ALJ was required to rate the degree of functional limitation in the four paragraph B areas, he was not required to make any more specific findings of the claimant's limitations. 499 F.3d at 1077-78. *Hoopai*, however, did not address whether an ALJ must consider mild mental limitations in his or her RFC assessment; rather, in the portion of the decision to which Defendant cites, the Ninth Circuit considered whether the ALJ complied with 20 C.F.R. § 404.1520a(c)(3), which requires the ALJ to make specific findings at step two in determining whether a mental impairment is severe. *Id.* Because the ALJ's step two analysis is not at issue here, *Hoopai* is inapposite.

Ultimately, aside from a brief, boilerplate indication that "any impairment, symptom, or condition not addressed above has not affected the claimant's residual functional capacity," the ALJ's opinion does not include any discussion or analysis of how Plaintiff's non-severe mental impairments were factored into the RFC determination, and the RFC itself does not contain any nonexertional limitations. (AR 28, 33). For these reasons, it is not clear that in determining Plaintiff's RFC the ALJ actually considered the mild limitations across the functional areas found at step two. On this basis, the Court finds that the ALJ erred.

### d. Harmless Error

While the Court may affirm even if the ALJ commits legal error, the Court may only do so where the error is "inconsequential to the ultimate nondisability

determination," or where "the agency's path may reasonably be discerned." *See Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

Here, although the ALJ found Plaintiff's non-severe mental impairments created mild limitations in three of the four mental functional areas, (AR 25-26), it is unclear from the ALJ's decision whether Plaintiff can perform his past relevant work notwithstanding these mild limitations, particularly where the VE testified that if an individual with Plaintiff's age, education, work experience, and RFC were further limited to performing simple, routine tasks, he would be unable to perform this past work. (AR 68). As such, the Court cannot say this error was harmless.

### 2. Subjective Symptom Testimony

Next, Plaintiff asserts the ALJ erred in rejecting his subjective symptom testimony with respect to his mental impairments. (Dkts. 19, 22).

#### a. Legal Standard

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that [his or] her impairment could reasonably be expected to cause the severity of the symptom [he or] she has alleged; [he or] she need only show that

it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[4] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

---

[4] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo*, 871 F.3d at 679 n. 5.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

The ALJ's decision may be upheld even if not all of the ALJ's reasons for discrediting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Security Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Additionally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can be "specific and substantial reasons that undermine ... credibility." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ may not, however, make an adverse finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). While the ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain" or other symptoms, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), the ALJ may not reject subjective pain or other symptom testimony merely

**MEMORANDUM DECISION AND ORDER - 15**

because it was not fully corroborated by objective medical evidence, *Robbins,* 466 F.3d at 883.

### b.  The ALJ's Decision

In his Adult Function Reports, Plaintiff alleged that he had difficulty with memory, concentration, understanding, completing tasks, following instructions, and getting along with others. (AR 242, 277). The ALJ rejected some of this testimony based upon (1) Plaintiff's ability to "testify without difficulty" during the hearing, (AR 26); (2) inconsistency with the objective medical evidence (AR 26) (claimant's mental exams "show no memory loss," he "demonstrates coherent speech and normal thought process," and he "generally demonstrates normal attention and concentration" and "good judgment and insight"); (AR 30) ("The remaining evidence shows the claimant's condition is less serious than alleged because, despite the claimant's condition, his medical exams are good and he … demonstrates unremarkable mental exams throughout his medical history." (citing AR 732, 740, 891, 900, 915, 922)); and (3) conservative psychiatric treatment, (AR 26) ("[H]is history shows no psychiatric treatment or hospitalization, suggesting his condition is not serious enough to warrant treatment."). Plaintiff challenges the ALJ's second and third reasons for discounting his subjective symptom testimony. (Dkt. 19 at 12-15).

### c.  Analysis

Here, the ALJ reasonably considered the medical evidence and concluded it did not support the alleged severity of Plaintiff's symptoms. For example, the ALJ cited to several mental status examinations throughout her decision in which Plaintiff's mental

status findings were "unremarkable." (AR 732) ("Mood is mildly depressed. He does display affective narrowing with mild irritability. There is no psychomotor restlessness but there is expressed situational anxiety. Speech is clear and coherent. Verbal content is appropriate in response to questions. Memory, attention, concentration, and general fund of knowledge are intact. He scores a 30 of 30 on MMS screening."); (AR 891) ("Psychiatric; Normal; orientation – oriented to time, place, person & situation. Appropriate mood and affect. Normal insight. Normal judgment. Mild depression."); (AR 900) ("[O]riented to time, place, person & situation. No agitation. No anhedonia. Appropriate mood and affect. Behavior is appropriate for age. No compulsive behavior. Sufficient fund of knowledge. Sufficient language. Patient is not in denial. Not euphoric. Not fearful. No flight of ideas. Not forgetful. No grandiosity. No hallucinations. Not hopeless. Appropriate affect. No memory loss. No obsessive thoughts. Normal insight. Normal judgment. Normal attention span and concentration. No pressured speech. He marks having harmful thoughts daily, however further discussion with patient he states this isn't the case and he would never act."); (AR 915) ("[O]riented to time place person & situation. Appropriate mood and affect. Normal insight. Normal judgment. Moderate episode of recurrent major depressive disorder. Patient's depression is progressively worsening since of [sic] his inactivity and increasing amount of stress related to his pain. Encouraged him to seek out counseling encouraged him to call his insurance to see if they have a recommendation. We will increase his Zoloft to 200mg as he has done this in the past and has been helpful."); (AR 922) ("Oriented to time, place, person & situation. Appropriate mood and affect. Normal insight. Normal judgment.").

**MEMORANDUM DECISION AND ORDER - 17**

Plaintiff asserts the ALJ's "over-reliance on benign mental status examination findings is misplaced," suggesting that the ALJ should have focused more on Plaintiff's own subjective reports to his treating providers, which support an alternate finding. (Dkt. 19 at 12-13 (citing AR 622, 732, 735, 865, 879, 886-87, 894, 915, 918, 986, 1002)). But the majority of the mental status exams to which the ALJ cites are not "general" or "routine observations made in the course of physical exams related to … plaintiff's various physical conditions." *See Terry B. v. Comm'r of Soc. Sec. Admin.*, No. 6:21-CV-01438-JR, 2022 WL 17667221, at *5–6 (D. Or. Dec. 14, 2022) (finding error where the ALJ disregarded observations "more specific to plaintiff's mental health symptoms compared to the routine observations made in the course of physical exams related to—in many instances—plaintiff's various physical conditions"). Rather, these records were completed by Dr. Hackenberg, who, as discussed at length below, evaluated Plaintiff's mental impairments, specifically considered his subjective complaints and suicidal ideations, and referred him for psychiatric counseling. (AR 900, 915). More still, the ALJ specifically considered Plaintiff's subjective complaints contained in his adult function report in evaluating his subjective symptom testimony. (AR 25-26). Even where the evidence could be interpreted differently, the Court must uphold the ALJ's conclusion where it is supported by substantial evidence. *Burch*, 400 F.3d at 679. The Court finds that it is. Accordingly, the ALJ provided a specific, clear and convincing reason for discounting Plaintiff's characterization of his symptoms based upon its inconsistency with the objective medical evidence.

Plaintiff also asserts the ALJ mischaracterized the evidence related to Dr. Hackenberg's treatment notes and asserts that the ALJ erred in considering Plaintiff's lack of psychotherapy as a failure to seek treatment due to Plaintiff's loss of health insurance. (Dkt. 19 at 15). This argument lacks merit. An ALJ may consider conservative treatment in evaluating subjective symptom allegations, *Tommasetti*, 533 F.3d at 1039; thus, it was not error for the ALJ to discount Plaintiff's allegations about the severity of his mental impairment based upon evidence in the record that Plaintiff did not require psychiatric treatment or hospitalization, (AR 26). While the evidence does indicate that Dr. Hackenberg referred Plaintiff for psychiatric counseling twice—the second time, due to Plaintiff's report that he lost his health insurance, (AR 903, 907)—the rest of Dr. Hackenberg's treatment notes clarify his assessment of Plaintiff's mental impairments.

After assessing Plaintiff with a severe episode of "recurrent major depressive disorder without psychotic features," Dr. Hackenberg "stopped his Cymbalta and started him on Zoloft." (AR 900, 903). Further, in response to Plaintiff's indication that he has "little interest or pleasure in doing things," feels "down depressed or hopeless," and has "[t]houghts that [he] would be better off dead or of hurting [him]self in some way" "everyday," Dr. Hackenberg provided Plaintiff with several resources that could help. (AR 895). Dr. Hackenberg later clarified his evaluation of Plaintiff, noting:

> [Plaintiff] marks having harmful thoughts daily, however further discussion with patient he states this isn't the case and he would never act. He is frustrated not working and all the legal with his work comp case. [H]e has good support with his wife. He understands to reach out if struggling and is willing to see mental health for support. I think patient is a low risk and I think it is appropriate to treat [outpatient] at this time. However, I did

educate patient strongly that if change he is to seek care right away and I
gave him all the contact info in regards to this.

(AR 900).

At a subsequent appointment in October 2019, Dr. Hackenberg noted Plaintiff was
"willing to see a Psychiatrist" and indicated that the relationship between Plaintiff's
chronic pain and depression/anxiety "is very serious" and that he "may consider pain
management referral pending how his psychiatrist apt goes." (AR 907). However, at
Plaintiff's next two appointments in January 2020 and March 2020, it appears Plaintiff
had obtained insurance once again, but still had not seen a counselor. (AR 915)
("Encouraged [Plaintiff] to continue to seek out counseling encouraged him to call his
insurance to see if they have a recommendation."); (AR 918) ("[H]e is going to see a
counselor, he hasn't scheduled an apt yet."). Dr. Hackenberg also increased Plaintiff's
Zoloft prescription to 200mg, noting "he has done this in the past and has been helpful."
(AR 915). The ALJ's decision makes clear that she considered this evidence in analyzing
Plaintiff's subjective symptom testimony. (AR 26) ("[C]laimant's mental exams
generally show he has normal attention and concentration, even when he experienced a
mental decline secondary to a new medication in June 2019."); (AR 30) ("The …
evidence shows the claimant's condition is less serious than alleged because, despite the
claimant's condition, his medical exams are good and he does not comply with treatment.
For example, the claimant demonstrates unremarkable mental exams throughout his
medical history."). This, too, was a specific, clear, and convincing reason for discounting
Plaintiff's allegations about the severity of his symptoms.

**MEMORANDUM DECISION AND ORDER - 20**

In consideration of the record as a whole, the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony about the severity of his mental impairments.

### 3. Remand

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *Harman*, 211 F.3d at 1179-81. In general, when the Court reverses an ALJ's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

Here, remand is appropriate because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly considered. On remand, the ALJ should reassess Plaintiff's RFC by including any warranted functional limitations relating to Plaintiff's mental impairments or explaining why any such limitations should be excluded. *See Hutton*, 491 F. App'x at 851 ("[W]hile the ALJ was free to reject Hutton's testimony as not credible, there was no reason for the ALJ to

disregard his own finding that Hutton's nonsevere PTSD caused some "mild" limitations in the areas of concentration, persistence, or pace."). The ALJ should then proceed through steps four and five to determine what work, if any, Plaintiff was capable of performing during the relevant period. *See* 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

## <u>ORDER</u>

NOW THEREFORE IT IS HEREBY ORDERED that:

1.      The decision of the Commissioner of Social Security is **REVERSED**.

2.      This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3.      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: March 10, 2023

_____
Honorable Debora K. Grasham
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 22**